**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **TERRELL DISMUKES, #R73442,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**SHANE HILEMAN,**<br>**JEFFERY M. DENNISON,**<br>**and BRETT NEIGHBORS,**<br><br>**Defendants.** | **)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)** | **Case No. 18-cv-00724-MJR** |

**MEMORANDUM & ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Terrell Dismukes, an inmate who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that he has been subjected to unconstitutional conditions of confinement at Shawnee since he transferred to the facility on January 10, 2018. (Doc. 1, pp. 5-18). He asserts an Eighth Amendment claim against Shane Hileman, Brett Neighbors, and Jeffery Dennison. *Id*. Plaintiff seeks monetary relief against these individuals. (Doc. 1, p. 19).

This case is now before the Court for preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening –** The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal –** On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under this standard.

**Complaint**

According to the allegations in the Complaint, Plaintiff transferred to Shawnee on January 10, 2018. (Doc. 1, p. 5). He filed the instant Complaint four months later. *Id*. In it, Plaintiff alleges that the following officials deliberately disregarded the unconstitutional conditions of his confinement at Shawnee, in violation of the Eighth Amendment: Jeffery Dennison (warden), Shane Hileman (clothing room supervisor), Brett Neighbors (chief engineer), Karen Smoot (health administrator), Jane Doe (nurse), and Alfonso David (doctor).[1]

By way of background information, Plaintiff explains that he was initially housed at Vandalia Correctional Center ("Vandalia"). (Doc. 1, p. 5). According to statewide policy, each prison is responsible for providing its inmates with the same basic clothing. (Doc. 1, pp. 5-6). Before transferring to a new facility, inmates are required to return these items. (Doc. 1, p. 6).

---

[1] Plaintiff did not list Karen Smoot, Jane Doe, or Alfonso David among the defendants in the case caption or in his list of defendants. All claims against these individuals are considered dismissed without prejudice from this action. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

Consistent with this policy, Plaintiff was issued clothing and new boots at Vandalia, and he returned these items before transferring to Shawnee. *Id*. In place of his boots, Plaintiff was provided with a pair of thin slip-on tennis shoes. *Id*. The shoes are typically given to inmates who are confined to their cells for 23 hours per day with little exposure to the elements, such as inmates in segregation or on suicide watch. *Id*. He assumed that the shoes were for his temporary use. *Id*.

When he arrived at Shawnee on January 10, 2018, Plaintiff received a bedroll containing two torn and urine-stained sheets. (Doc. 1, p. 5). He was also issued a blanket with holes in it, but no mattress cover. (Doc. 1, pp. 5, 8). Plaintiff was informed that he could either wait two years for new items or purchase them directly from the prison's commissary. (Doc. 1, p. 7). Plaintiff claims that statewide policy entitles inmates to new sheets, pillows, blankets, mattress covers, boots, gym shoes, and t-shirts every year. *Id*.

The following day, Shane Hileman issued Plaintiff allegedly inadequate clothing, including "dirty torn pants," two old blue shirts (with missing buttons), and an old coat (with a broken zipper). (Doc. 1, pp. 6, 8). When Plaintiff attempted to exchange his slip-on tennis shoes for a pair of boots, Hileman informed him that no boots would be issued, but Plaintiff could purchase them in the prison's commissary. (Doc. 1, p. 6). Plaintiff was in shock. *Id*. He could not believe what he was hearing, given that it was the month of January. *Id*. All other prisons in the state had a policy of issuing new clothing, but Shawnee inmates only received three new pairs of boxer shorts, three new pairs of socks, one bath towel, and one face towel every seven months. *Id*.

Plaintiff could not afford to purchase any new items. (Doc. 1, p. 8). As a result, he had to endure "brutal winter conditions" in the flimsy tennis shoes and inadequate clothing. (Doc. 1,

pp. 6-7). Three times each day, he was required to walk to the chow hall in freezing temperatures. (Doc. 1, p. 7). The shoes did not keep his feet warm or dry, particularly during one winter storm and "multiple days of continuing rain." *Id*. Plaintiff could have suffered from frost bite, but he did not. *Id*. He suffered from discomfort associated with wet shoes, wet weather, and cold temperatures. *Id*.

On January 11, 2018, Plaintiff was transferred into the prison's general population and placed in Cell 2-C-60. (Doc. 1, p. 9). The cell was in poor condition. *Id*. Paint peeled from the walls and floors. *Id*. The windows were broken, and the screens were screwed shut. *Id*. Thick plastic bags and duct tape covered them. (Doc. 1, pp. 9, 16). The vents were covered in rust and dust. *Id*. Plaintiff's cell had no hot water and no mirror. (Doc. 1, p. 10). His top bunk was covered in a thin, urine- and rust- stained mattress. (Doc. 1, p. 9). To protect himself from germs and pests in the filthy mattress, Plaintiff used his blanket as a mattress cover and the two sheets as a blanket. *Id*. During the winter months, he was uncomfortably cold. *Id*. As the outside temperatures rose into the 70's in February and March, however, the cell became unbearably hot. (Doc. 1, pp. 10, 16). This is largely because Warden Dennison and Chief Engineer Neighbors decided to turn up the thermostat when there was no air circulation due to the clogged vents. *Id*. Inmates began using their property boxes to break the screws on the screened windows in order to get fresh air. *Id*. Plaintiff suffered from breathing difficulties. *Id*.

The entire wing was plagued with similar problems. (Doc. 1, p. 10). There was no running water on the top deck. *Id*. The toilets in the dayroom were broken and filled to the brim with feces "for months." *Id*. Plastic bags were placed over the tops of the toilets to mask the smell, but this system failed. *Id*. The two showers were filled with peeling paint and mold. (Doc. 1, pp. 11, 14). The rusty shower vents and pipes were clogged, resulting in poor

circulation and "no water pressure." *Id*. Further, the showers produced warm water for no more than five minutes each day. *Id*. The showers on the lower deck had many of the same problems. *Id*.

The access buttons on the prison cells were frequently broken. (Doc. 1, p. 12). Inmates often missed meals, chapel, and dayroom access because they could not leave their cells. *Id*. Intruders could also enter the cells and injure inmates. *Id*.

The dining hall and meal preparation areas were infested with mice. (Doc. 1, p. 15). As in other parts of the prison, no hot water was available for cooking or cleaning. *Id*. The prison also lacked a sufficient number of cups to serve all of the prisoners. *Id*. This meant that food and drinks were served on unclean surfaces. *Id*. In addition, the food was consistently served at the wrong temperature and was undercooked. *Id*. The bread and milk were served well beyond their expiration dates. *Id*.

To make matters worse, an inmate was caught urinating into the inmate water container. (Doc. 1, p. 15). He had been doing so for months, but his misconduct went unnoticed by the kitchen supervisors. *Id*. Although the inmate was placed in segregation as punishment, Plaintiff and other prisoners were nevertheless exposed to the water contamination. *Id*. Plaintiff claims that he experienced frequent bouts of illness that included a sore throat, headaches, stomachaches, and diarrhea. (Doc. 1, p. 13). He noticed that the symptoms subsided when he consumed less water and returned when he increased his water intake. *Id*. In February 2018, Plaintiff soiled his clothing as a result of one of these unexpected bouts of diarrhea. *Id*.

Plaintiff claims that all three defendants were aware of these conditions and the dangers they posed to Plaintiff, but took no meaningful steps to address them. Warden Dennison and Clothing Supervisor Hileman allegedly conspired to violate Plaintiff's rights and "make a profit"

for the prison and the State of Illinois by forcing inmates to purchase bedding, clothing, and shoes from the commissary. Warden Dennison and Chief Engineer Neighbors were well aware of conditions in Plaintiff's cell, wing, dining hall, and dietary unit because these conditions were present for months and even years. (Doc. 1, pp. 11-12). They nevertheless denied Plaintiff's emergency grievance aimed at addressing these conditions.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

**Count 1** - Eighth Amendment claim against Defendants Hileman and Dennison for subjecting Plaintiff to unconstitutional conditions of confinement at Shawnee by issuing him inadequate clothing, bedding, and shoes.

**Count 2 -** Eighth Amendment claim against Defendants Neighbors and Dennison for subjecting Plaintiff to living and dining conditions that pose a serious risk of harm to his health and safety at Shawnee.

**Count 3 -** Conspiracy to deprive Plaintiff of a protected property interest in violation of the Fourteenth Amendment and increase prison revenue by forcing him to purchase clothing, shoes, and bedding from the prison's commissary.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

### Counts 1 and 2

The Eighth Amendment protects prisoners from conditions that deny them "the minimal civilized measure of life's necessities" and create an excessive risk to their health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A claim for unconstitutional conditions of

confinement includes an objective and a subjective component. *Farmer*, 511 U.S. at 834. The objective component requires the plaintiff to demonstrate that he was deprived of the minimal civilized measures of life's necessities. *McKinley v. Schoenbeck*, -- F.3d --, 2018 WL 1830942, *4 (7th Cir. April 17, 2018). The subjective component requires the plaintiff to demonstrate that each defendant "knew of a substantial risk of serious injury . . . but nevertheless failed to take reasonable measures to prevent that harm from occurring." *Id*. (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)).

1. Objective Component

The allegations offered in support of Count 1 satisfy the objective component of this claim at screening. Plaintiff complains of inadequate clothing, shoes, and bedding during the winter months. "[C]onditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)). For example, inadequate clothing and bedding, when combined with extreme temperatures and/or poor ventilation, may support an Eighth Amendment claim. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) (Eighth Amendment right to adequate shelter includes right to protection from cold). *See also Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (exposure to extreme cold for seventeen hours could constitute Eighth Amendment violation); *Henderson v. DeRobertis*, 940 F.2d 1055, 1058 (7th Cir. 1991) (deprivation of blankets for four days in sub-freezing temperatures could constitute Eighth Amendment violation). *But see Davenport v. Szczepanski*, 704 F. App'x 602 (7th Cir. 2017) (denial of third

pair of free shoes does not amount to cruel and unusual punishment); *Mays v. Springborn,* 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner who suffered from hurt ears, numb hands, feelings of frostbite, and caught colds because he was never issued adequate winter clothing showed only that he was subject to the "usual discomforts of winter"). The allegations satisfy the objective component of Plaintiff's Eighth Amendment claim in Count 1 at screening.

As for Count 2, Plaintiff also describes many conditions that, alone or in combination, support an Eighth Amendment claim. For example, regular exposure to mice or other pests in living and dining areas, particularly when combined with food contamination, give rise to an Eighth Amendment claim. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) ("[p]rolonged pest infestation, specifically an infestation involving cockroaches and mice" may support a claim). Drinking water that is contaminated with urine likewise supports a claim. *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) (citing *Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011) ("Just as correctional officers cannot deprive inmates of nutritional food, they cannot deprive inmates of drinkable water."). Inadequate ventilation, sanitation, bedding, or hygienic materials also support a claim. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (citing *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987)). Plaintiff is not required to identify a specific physical harm he suffered from exposure to a particular condition, if the condition causes a psychological or probabilistic harm. *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk, and inmate susceptibility, prison conditions may violate the Eighth Amendment if they cause either physical, psychological, or probabilistic harm). These conditions, though not exhaustive, support the Eighth Amendment claim in Count 2 for screening purposes.

2. Subjective Component

Plaintiff also maintains that the defendants knew about the dangers posed by the conditions at Shawnee and disregarded them. Many of the conditions were present for months or years. When Plaintiff notified the defendants verbally or in writing, however, they simply ignored his complaints about the prison conditions.

In connection with Count 1, Plaintiff also alleges that Clothing Supervisor Hileman and Warden Dennison allegedly implemented a policy that required inmates to purchase many of their own basic necessities, such as clothing, bedding, and shoes, or wait up to two years for new items. Plaintiff asserts that the policy violated statewide regulations and his Eighth Amendment rights because he could not afford to purchase basic necessities. Although the violation of a state regulation does not establish a constitutional violation *per se*, the implementation of a prison policy that denies an inmate the minimal measures of life's necessities may support an Eighth Amendment claim. *See, e.g., Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (dismissing claim that defendants did not comply with applicable state regulations); *White v. Olig*, 56 F.3d 817, 821 (7th Cir. 1995) (holding that "failure to follow procedures mandated by state but not federal law . . . can only establish a state law violation" and "are not remedial under Section 1983"). Given that the policy allegedly denied Plaintiff basic necessities, Count 1 shall receive further review against Warden Dennison and Clothing Supervisor Hileman.

In connection with Count 2, Plaintiff alleges that he complained directly to Warden Dennison and Chief Engineer Neighbors verbally and/or in writing about the living conditions in the prison. The allegations in the Complaint are sufficient to state a claim in Count 2 against these individuals.

**Count 3**

Plaintiff also alleges that Warden Dennison and Clothing Supervisor Hileman conspired to generate revenue at the prison's commissary by forcing inmates to purchase their own bedding, clothing, and shoes. Although civil conspiracy claims are cognizable under § 1983, the Complaint fails to state a claim in this case. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). Conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). In other words, there is no constitutional violation in conspiring to cover-up an action which does not violate the Constitution. *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

The allegations articulate no Fourteenth Amendment claim. Depriving an inmate of his property might implicate the right to be free from the taking of property, such as money, without due process of law under the Fourteenth Amendment. However, an inmate must allege that his property was taken without due process, and Plaintiff makes no such claim. Further, there is no cognizable constitutional claim, if the state provides an adequate legal remedy. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Therefore, Plaintiff cannot proceed with a constitutional claim for a deprivation of his property or money as a result of the requirement that he purchase personal property at the prison's commissary. Given that the underlying Fourteenth Amendment claim fails, Plaintiff's

conspiracy claim also fails. Count 3 shall be dismissed without prejudice to Plaintiff pursuing relief in the Illinois Court of Claims.

## Pending Motion

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for a decision.

## Disposition

**IT IS ORDERED** that **COUNT 1** survives screening and will receive further review against Defendants **SHANE HILEMAN** and **JEFFERY M. DENNISON,** and **COUNT 2** survives screening and will receive further review against Defendants **JEFFERY M. DENNISON** and **BRETT NEIGHBORS** in their individual capacities. However, **COUNTS 1** and **2** are **DISMISSED** without prejudice against those defendants who are not named in connection with each claim.

**IT IS ORDERED** that **COUNT 3** is **DISMISSED** without prejudice against Defendants **JEFFERY M. DENNISON, BRETT NEIGHBORS,** and **SHANE HILEMAN** for failure to state a claim upon which relief may be granted in this Court. Plaintiff is free to pursue this claim in the Illinois Court of Claims.

With regard to **COUNTS 1** and **2**, the Clerk of Court shall prepare for the Defendants **SHANE HILEMAN, JEFFERY DENNISON,** and **BRETT NEIGHBORS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take

appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint (Doc. 1) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, whether or not his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 11, 2018**

**s/ MICHAEL J. REAGAN**
**Chief Judge**
**United States District Court**